IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

LAURIE HARPER,                           )
                                         )
       Plaintiff,                        )
                                         )
vs.                                      )   Case No. 09-CV-238-TLW
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
       Defendant.                        )

**OPINION AND ORDER**

Plaintiff Laurie Harper seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 11].

Plaintiff protectively filed her application for disability insurance benefits on July 22, 2005, claiming an onset date of February 8, 2005. [R. 41]. The relevant adjudicated period is from February 8, 2005 to March 19, 2008.

The Administrative Law Judge (ALJ) conducted a hearing in the instant case on March 10, 2008. [R. 256]. Following entry of the ALJ's decision denying benefits, the Appeals Council, on February 20, 2009, denied plaintiff's request for review. [R. 4]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981. On April 15, 2009, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237

(10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that she is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the relevant adjudicated period. 20 C.F.R. § 404.1512(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C.§ 423 (d)(3), and 20 C.F.R. § 404.1513.

On appeal, plaintiff asserts the ALJ: (1) failed to develop the record, (2) failed to mention the opinion of the treating physician, (3) failed in his duty to an unrepresented plaintiff, (4) acted as his medical expert, (5) used the vocational expert in an improper manner, and (6) failed to perform a proper credibility determination. [Dkt. # 18 at 2].

**Background**

Plaintiff is an African American female. [R. 96]. She was born on May 30, 1963 and was 44 years old at the time of the hearing before the ALJ. [R. 41, 271]. Plaintiff graduated from high school, completed two years of college, and holds a certificate in human resources. [R. 48]. In 1990, plaintiff married Israel Harper. [R. 41-42]. She had an ectopic pregnancy, and the marriage produced no children. [R. 42, 95]. Plaintiff was employed for 25 continuous years. [R. 38]. Her most recent full time employment was from 1993 through 2005, with Stairmaster/Nautilus manufacturing. [R. 262]. She commenced employment as a receptionist, and worked her way to human resource assistant, human resource specialist, and ultimately, to human resource manager. [R. 102, 273]. She contends that on February 8, 2005, she woke with a sudden onset of hip pain that spread to other areas of her body; so she quit her job on that date. [R. 101]. Plaintiff alleges that she is unable to work due to systemic muscle disease, weakness in her extremities, fatigue, depression and insomnia. [R. 44-45]. She claimed to have resigned her position with Stairmaster/Nautilus, because she felt she could no longer perform her duties as human resource manager because it required travel and training presentations. She did not seek other employment. [R. 265]. At the time of the hearing on March 10, 2008, plaintiff was working 10 to 12 hours per week as a secretary for Liberty World Outreach Church. [R. 266-267, 91]. Plaintiff elected not to be represented by counsel at the hearing before the ALJ. She objected to certain exhibits, testified on her own behalf, called her husband to testify, and questioned the vocational expert. [R. 258-276]. Kent Farish, M.D, is plaintiff's primary care physician. [R. 260]. Dr. Farish prescribes medication to plaintiff and prays with her "almost every time" she has an appointment with him. [R.. 273]. Dr. Farish referred plaintiff to Lawrence Jacobs, M.D., a Rheumatology Specialist, who opined that plaintiff does not

have a serious muscle disease. Dr. Jacobs attributed plaintiff's symptoms to stress. [R. 110, 93].

The ALJ found that plaintiff has not engaged in gainful activity since February 4, 2005. At the time of the hearing, plaintiff was earning $10.00 per hour, doing part time secretarial work. Her employment was at a level below substantial gainful activity under the regulations. [R. 266]. The ALJ determined plaintiff's severe impairments to be fibromyalgia and depression. [R. 19]. He found that plaintiff's impairments, in combination, did not meet or medically equal the listed impairments, specifically listing 1.02 (Major Dysfunctions of a joint(s) due to any cause) and listing 12.04 (Affective Disorders). [R.19-20]. As for listing 1.02, the ALJ determined that plaintiff's impairment did not satisfy the requirement of an inability to ambulate effectively or an inability to effectively perform fine and gross movements. [R. 19]. In regard to listing 12.04, the ALJ found plaintiff had moderate limitations in daily living activities; mild difficulty in social functioning, moderate difficulty in concentration, persistence and pace; and had experienced no episodes of decompensation. [R. 20].

The ALJ determined plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work. [R. 20]. The ALJ found plaintiff's testimony less than credible regarding limitations in her daily activities and capacity to function. [R. 21]. The ALJ found plaintiff capable of returning to her past work as a secretary, because her work-related activities were not precluded by his RFC assessment. [R. 22]. In the alternative, based on her age, education, work history, her RFC, the Grid, and the testimony of the vocational expert, the ALJ concluded that plaintiff was capable of performing other sedentary work, such as, charge account clerk and call out operator, and that job opportunities in these fields exist in significant numbers in Oklahoma and the national economy. [R. 22-23]. Thus, the ALJ determined that plaintiff was not disabled within the meaning

of the Social Security Act. [R.23]. These findings were made at steps four and five in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

## Discussion

As her first issue of error, plaintiff contends the ALJ failed to develop the record and failed to review the longitudinal record which she purports lead to an erroneous RFC. The Court disagrees. At the beginning of the hearing, the ALJ asked plaintiff if she had any objection to anything in the file. [R. 258]. Plaintiff objected to a statement in an examination record issued by Dr. Jacobs identifying her as a "white female." [R. 259-260]. The ALJ acknowledged this objection and the following colloquy occurred:

> ALJ:   All right. Do you have any objections to any, anything else?
>
> CLMT:   No. I just wanted to say that Dr. Jacobs was saying that he didn't see anything significant or any problems and, but when I was seeing Dr. Jacobs, I even had my muscle enzymes elevated to 384 and normally it's 225 and, I was having problems at that time. So I just didn't understand why he didn't think I wasn't having no significant muscle problem.
>
> ALJ:   Well, all right. I note, I'll note your, your objection and I'll admit 1A; 1B; 1D; 1E and . . . mark that letter 10.
>
> HA:   10E? Okay.
>
> ALJ:   1F through 10F.

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

>    (Exhibits 1A through 10F, previously identified, were received into evidence and made a part of the record.)

[R. 261].  The ALJ gave plaintiff an opportunity to object to the record.  Other than objecting to the opinion of her medical specialist, the plaintiff voiced no other objections.  Additionally, after plaintiff accepted appointment of counsel, her attorney submitted four exhibits to the Appeals Council on her behalf, as follows:

>    Exhibit AC-1  Lab Reports from Regional Medical Laboratory, Inc.
>    Dated 3/2/05 to 4/12/06 (26 pages).
>
>    Exhibit AC-2  Lab Reports from Saint Francis Hospital
>    Dated 10/30/06 to 2/14/08  (12 pages)
>
>    Exhibit AC-3  Medical Records from Kent Farish, M.D.
>    Dated 4/22/05 to 2/13/08 (10 pages)
>
>    Exhibit AC-4  Attorney Brief
>    Dated 9/29/08 (12 pages)

[R. 3].  The Appeals Council had the benefit of these four additional medical records and arguments of counsel.  The Appeals Council acknowledged receipt of the exhibits and held:

>    In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
>    We also looked at a progress note dated March 24, 2008 from the Rheumatology Associates.  The Administrative Law Judge decided your case through March 19, 2008.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before March 19, 2008.
>
>    If you want us to consider whether you were disabled after March 19, 2008, you need to apply again.  The date you file a claim can make a difference in the amount of benefits we can pay.
>
>    You have the right to file a new application at any time, but filing a new application is not the same as appealing our action.

[R. 5].  The duty of the Appeals Council is defined under 20 C.F.R. § 404.970(b), which provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Id.  Contrary to plaintiff's objection, the relevant medical evidence is of record and was considered by the Appeals Council under the provisions of § 404.970(b).  The Appeals Council held that the exhibits which relate to the adjudicated period, were not "contrary to the weight of the evidence currently of record."  [R. 5].  The other exhibit submitted by her counsel was returned because it was related to a time beyond the date of the adjudicated period.  No further explanation was needed.

Plaintiff claims the ALJ did not consider the "longitudinal record."  A "longitudinal record" is not necessarily relevant in social security disability claims because those records may not relate to the adjudicated period.  In medical terms a "longitudinal record" is the patient's entire medical history.

> The medical history is a longitudinal record of what has happened to the patient since birth.  It chronicles diseases, major and minor illnesses as well as growth landmarks.  It gives the clinician a feel for what has come before.  Often it may give clues to current disease states.

See www.wordiq.com/definitions/Medical.  In this instance, there was no indication of any diseases that plaintiff had prior to the onset of her muscle pain that would "give clues to current disease states."  Thus, the ALJ did not error in failing to review a longitudinal record in this case.

Plaintiff claims there is no support in the record for the ALJ's finding as to Dr. Jacobs.  The ALJ wrote "[O]ne of her physicians, a Dr. Jacobs, does not believe she has anything beyond the

effects of stress." [R. 22]. As previously stated, plaintiff objected to the ALJ's reliance on one of Dr. Jacobs' examination records because of a notation identifying her as a "white female." [R. 259]. Plaintiff claimed this misstatement indicates Dr. Jacobs' notes were unreliable. Plaintiff testified that Dr. Jacobs "didn't see anything significant or any problems" with her and attributed her insignificant muscle pain to stress. [R. 94, 260-261]. Plaintiff's testimony, relating Dr. Jacobs' opinion, is proper evidence in this case.

Plaintiff contends the ALJ cited no evidence to support his RFC assessment that plaintiff is capable of performing work as a secretary. She claims the ALJ simply concluded that she was capable of performing sedentary work, but provided no evidence to support his conclusion. The Court finds no merit to this claim. The ALJ relied on medical evidence to support his RFC assessment and his determination at steps four and five that plaintiff was capable of performing a full range of sedentary work. The ALJ found that although her impairments were severe, they did not meet the listing agreement to establish per se disability, and considered in combination, her functional capability established that she was limited to sedentary work, but she was not disabled. The ALJ's statement of the evidence he relied on, follows:

> A report from Rheumatology Associates describes her having tenderness over the cervical and lumbar spine. Her diagnosis on June 29, 2005, was still only arthralgia and myalgia without adequate explanation. (Exhibit 3F, pgs. 11-15). The claimant continued to have mild muscle weakness and cramping. . . .
>
> Clinical psychologist Denise LaGrand, Psy.D. gave Ms. Harper a mental status examination on December 1, 2005. . . .Dr. LaGrand observed that Ms. Harper was able to remain focused on the examination. Her memory skills appeared adequate and her thoughts were logical, organized, and goal-directed. She appropriately completed the written history portion of the examination and denied having any difficulties with reading or writing. Dr. LaGrand diagnosed the claimant with moderate depression. But the prognosis was that with counseling and appropriate medication there was a good chance for improvement. . . .

> In terms of claimant's alleged depression, it has been shown to not be a factor that would necessarily impede her job performance. The record does not indicate that the claimant has sought counseling and she has never been hospitalized for psychiatric reasons. Dr. LaGrand advised that with counseling and medication, there was a good chance that Ms. Harper could handle most job situations. As for the claimant's fibromyalgia, there are no records of treatment following August 2006. One of her physicians, a Dr. Jacobs, does not believe she has anything beyond the effects of stress. Ms. Harper acknowledged that her medications relieved her physical discomfort although she does have side effects. . . But there are no medical documents substantiating the side effects. Nor is there any evidence that the side effects are inevitable and uncorrectable by changes of her medication or readjustment in the dosage of her present medications. Ms. Harper is able to work part-time for her church although this work is done at her discretion.

[R. 21-22]. Thus, the Court finds that the ALJ cited substantial medical evidence to support his RFC assessment and his alternative conclusions at steps four and five that plaintiff is not disabled.

As her second assignment of error, plaintiff claims the ALJ failed to mention or consider the opinion of Dr. Farish, her primary care physician. [Dkt. #18 at 4]. Although the ALJ did not reference Dr. Farish by name, the ALJ accepted Dr. Farish's diagnosis of myopathy [R. 147, 149, 151, 160, 167], fibromyalgia [R. 153, 170], myalgia [R. 155, 157, 173, 176], and depression [R. 157, 176, 186]. The ALJ also acknowledged that plaintiff was prescribed medication to control her symptoms. [R. 147-160, 166-182]. The record shows that Dr. Farish referred plaintiff to the physician specialist, for his evaluation and assessment. The ALJ properly relied on Dr. Jacobs' opinion. In citing Exhibit 3F, pages 11- 15, the ALJ referenced Dr. Jacobs' diagnosis of arthralgia and myalgia on June 29, 2005, and the following exhibits to show that plaintiff continued to have <u>mild</u> muscle weakness and cramping. [R. 21]. Dr. Farish's medical opinion of April 4, 2005, stated: "Laurie is disabled due to a myopathy that is yet undiagnosed. She has been referred to a rheumatologist and will be disabled minimum 60 days." [R. 243]. The Appeals Council found that Dr. Farish's opinion and examination notes did not diminish the substantial evidence supporting the

9

ALJ's decision. As stated above, a disability under the Social Security Act requires a showing that plaintiff's impairment can be expected to last for a continuous period of not less than 12 months. § 423(d)(1)(A). Dr. Farish's opinion did not met this requirement. Moreover, the ALJ did not reject Dr. Farish's diagnosis. Dr. Farish's diagnosis is not at odds with Dr. Jacobs' assessment and, as such, it is not contradictory evidence which should have been addressed.

As her third issue, plaintiff claims the ALJ failed in his duty to an unrepresented plaintiff. There is no merit to this contention. At the opening of the hearing, the ALJ ascertained that plaintiff understood that she had a right to be represented by counsel, that an attorney would have knowledge of the laws and regulations, and that any payment to an attorney was contingent on receiving an award of benefits. [R. 258]. Plaintiff voluntarily waived the right to counsel and advised the ALJ that she desired to proceed without legal representation. [R. 258-260]. Plaintiff expressed her objection to one of Dr. Jacobs' examination notes, testified on her on behalf, called her husband to substantiate her testimony, and cross examined the vocational expert. The ALJ asked plaintiff sufficient questions to ascertain, among other things: (1) the onset and nature of her alleged impairments, (2) work history, (3) medical treatment, (3) and the impact of her impairments on her daily life. He concluded his examination with an open ended question to allow her to provide any additional information she wanted him to consider. This inquiry satisfied the ALJ's heightened duty to an unrepresented claimant. See e.g. Musgrave v. Sullivan, 966 F.2d 1371, 1374-1375 (10th Cir. 1992).

Plaintiff contends the ALJ improperly acted as his own medical expert rather than relying on the evidence of record. As shown above, the ALJ properly cited and relied on medical evidence and the testimony of witnesses to support his findings and conclusions.

Plaintiff next contends that the vocational expert was improperly used at the hearing. Specifically, plaintiff claims: (1) the ALJ failed to ask the vocational expert an "all-encompassing question utilizing all" plaintiff's impairments, and (2) the ALJ erred in proceeding to step five claiming he had already decided that plaintiff could return to her past work as a secretary. [Dkt. # 18 at 8-9]. The ALJ propounded the following hypothetical question to the vocational expert:

> All right. Ms. Brassfield, if we take a, a claimant, I mean a person of the claimant's age, education and work background and the prior work experience, who could do a sedentary range of work with limited reaching overhead with the right hand and confined to simple work, would there be jobs in the regional or national economy that such a person could acquire?

[R. 273]. Plaintiff is correct that hypothetical questions must reflect with precision all of plaintiff's impairments. However, they need only reflect impairments and limitations that are borne out by the evidentiary record. Evans v. Charter, 55 F.3d 530, 532 (10th Cir. 1995). The limitations contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence. The hypothetical question restricted plaintiff to sedentary work, including limited reaching overhead with the right hand and confined to simple work.[2] The hypothetical question propounded to the vocational expert was also consistent with the ALJ's findings as to plaintiff's RFC. Thus, the Court finds no error in the ALJ's hypothetical question.

Plaintiff claims the ALJ erred in finding that plaintiff could return to her past work as a secretary, because the vocational expert testified that plaintiff could not return to her "past work." From a review of the transcript of the hearing, it is clear the vocational expert was referring to

---

[2] CFR § 404.1567(a) defines sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

plaintiff's past work as a human resource manager, not her work as secretary. Prior to the vocational expert's answer, the ALJ asked the vocational expert how she would view plaintiff's "prior work." [R. 272]. The vocational expert identified plaintiff's prior work as a human resource manager and as a part time secretary. [R. 272]. Then the ALJ asked what her last full time job was and the vocational expert identified it as the "human resource manager." [R. 272]. In answer to the above hypothetical, the vocational expert stated:

> Yes, there would be some that I could identify but, of course, past work would be eliminated due to the simple limitation there, but there would be other sedentary, unskilled occupations like a charge account clerk; 205.367-014 is the DIT code. . . There would be other sedentary, unskilled clerical occupations like a callout operator; DOT code 237.367-014 . . .unskilled assembly-type occupations like a fishing reel assembler; DOT code 732.684-062.

[R. 274-275]. However, even if the ALJ misunderstood the vocational expert, the misstatement is harmless error, because the ALJ made an alternative determination at step 5. At step five the burden of proof shifts to the Commissioner. A court must affirm the Commissioner's final decision if either the step four or step five disposition is supported by substantial evidence and applies the correct legal standard. See Berna v. Chater, 101 F.3d 631, 633-34 (10th Cir. 1996). Plaintiff does not challenge the ALJ's step five determination. At step five, the ALJ found that plaintiff is capable of performing the unskilled sedentary occupations as charge account clerk and call out operator. The Court finds that this unchallenged determination is supported by substantial evidence.

As her last issue of error, plaintiff contends the ALJ failed to perform a proper credibility determination. Specifically, plaintiff claims the ALJ's credibility assessment is nothing more than his own conclusory statement. [Dkt. # 18 at 10.]. The Court disagrees. Plaintiff claims the ALJ improperly ignored the thirty-two references to plaintiff's pain and other symptoms contained in the

medical records. In assessing plaintiff's credibility, the ALJ found:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

[R. 22]. The ALJ then set out the medical evidence he relied upon in assessing plaintiff's credibility.

> In terms of claimant's alleged depression, it has been shown to not be a factor that would necessarily impede her job performance. The record does not indicate that the claimant has sought counseling and she has never been hospitalized for psychiatric reasons. Dr. LaGrand advised that with counseling and medication, there was a good chance that Ms. Harper could handle most job situations. As for the claimant's fibromyalgia, there are no records of treatment following August 2006. One of her physicians, a Dr. Jacobs, does not believe she has anything beyond the effects of stress. Ms. Harper acknowledged that her medications relieved her physical discomfort although she does have side effects. . . But there are no medical documents substantiating the side effects. Nor is there any evidence that the side effects are inevitable and uncorrectable by changes of her medication or readjustment in the dosage of her present medications. Ms. Harper is able to work part-time for her church although this work is done at her discretion.

[R. 22]. The thirty two references of pain contained in the record are plaintiff's subjective complaints recorded in her physician's examination notes. Plaintiff's subjective statements are less reliable than the objective findings of Denise LaGrand, a licensed clinical psychologist; and Dr. Jacobs, a licensed physician specialist. The ALJ linked his credibility findings to the evidence of record and did not state his own conclusion. In Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995), the court held the ALJ's credibility determination was inadequate because the ALJ simply recited the general factors he considered and then said the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to the specific evidence he is relying on in determining credibility and link his credibility findings to specific evidence. Id. at 391. In the instant case, the ALJ complied with this standard. In Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court

stated that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372. Credibility determinations are peculiarly the province of the finder of fact, and a court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[3] The evidence relied upon by the ALJ clearly shows that plaintiff's testimony is not entirely credible, and this finding is supported by substantial evidence. Plaintiff fails to cite objective medical evidence which contradicts the ALJ's assessment of plaintiff's credibility. Plaintiff's argument addresses the weight rather than the sufficiency of the evidence.

## Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 9th day of September, 2010.

_____
T. Lane Wilson
United States Magistrate Judge

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.